IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHAEL BERNARD WYATT, #1530510, §
      Petitioner, §
       §
v. §     3:11-CV-554-L (BK)
       §
RICK THALER, Director, §
Texas Department of Criminal Justice, §
      Respondent. §

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and Special Order 3, this case was referred for findings, conclusions, and recommendation.  Petitioner, a Texas state inmate, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254.  For the reasons that follow, it is recommended that the petition be denied.

## I.  BACKGROUND

In 2004, Petitioner was arrested and indicted for attempted capital murder.  *State v. Wyatt*, No. F04-23432 (Crim. Dist. Court No. 4).  In April 2005, he entered an "open" plea of guilty after discussing with the prosecutor the possibility of testifying against his co-defendant, Aaron Lamont Vaughn, who had burglarized the home and fired shots at the homeowner.  *Wyatt v. State*, No. 05-08-00883-CR, 2009 WL 1801036, *1 (Tex. App. – Dallas, Jun. 24, 2009, no pet.) (unpublished).  The trial court held Petitioner's sentencing in abeyance pending a resolution of Vaughn's case.  *Id.*  Meanwhile, Vaughn fled the jurisdiction and his case was not heard for several years.  *Id.* at 2.  In the interim, Petitioner was charged with other felony offenses (two drug cases and a capital murder case) and the prosecutor subsequently declined to use him as a

witness.  *Id.*

In April 2008, Petitioner moved to withdraw his guilty plea, asserting he had pled guilty with the understanding that he would be able to testify for the State against Vaughn and that, if his testimony was truthful and helpful to the prosecution, he would receive a better plea bargain and deferred adjudication probation.  *Id.* at 2.  Following an evidentiary hearing, the trial court denied Petitioner's motion to withdraw.  The trial court then sentenced Petitioner to a forty-year term of imprisonment and a $10,000 fine, and Petitioner appealed.  *Id.* at 3-4.  The appellate court affirmed, finding Petitioner's guilty plea knowing and voluntary and concluding that the trial court did not abuse its discretion in denying the motion to withdraw the guilty plea.  *Id.* at 7. In a detailed opinion, the court found that Petitioner was properly admonished before pleading guilty and that no agreement existed with the State that Petitioner could earn a sentencing reduction by testifying.  *Id.*  Petitioner did not submit a timely petition for discretionary review, but later filed a state habeas application, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court without a hearing.  *Ex parte Wyatt*, No. 74,819-01, Event ID 2423287, at cover (hereinafter referred to as State Habeas Clerk's Record ("SHCR") followed by the page number).

Subsequently, Petitioner filed this timely federal habeas petition challenging his conviction and sentence.  In six grounds, he alleges (1) actual innocence, (2) involuntary guilty plea, (3) ineffective assistance of counsel preceding his guilty plea as well as post plea and during sentencing, (4) violation of his right against self-incrimination, (5) prosecutorial misconduct, and

(6) bias of the trial judge.[1]  (Doc. 2 at 7.)  Respondent contends that all of Petitioner's claims lack

merit and that the second and sixth claims are procedurally barred.  (Doc. 9.)  Petitioner filed a

reply.  (Doc. 10.)

## II.  DISCUSSION

### A.      Unexhausted and Procedurally Barred Claims (Grounds 2 and 6)

A petitioner must fully exhaust state remedies before seeking federal habeas relief.  28

U.S.C. § 2254(b).  To exhaust in accordance with section 2254, a petitioner must fairly present

the factual and legal basis of any claim to the highest state court for review prior to raising it in

federal court.  *See Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005).  In Texas, a prisoner must

present his claims to the Texas Court of Criminal Appeals (TCCA) in a petition for discretionary

review (PDR) on direct appeal or in an application for a writ of habeas corpus.  *Richardson v.*

*Procunier*, 762 F.2d 429, 432 (5th Cir. 1985).  A petitioner's failure to exhaust is generally a

procedural bar to federal habeas review, although the federal court may excuse the bar if the

petitioner can demonstrate cause and prejudice for the default or that the court's failure to

consider the claims will result in a fundamental miscarriage of justice.  *Ries v. Quarterman*, 522

F.3d 517, 523-24 (5th Cir. 2008).

Respondent correctly notes the second and sixth claims (involuntary plea and trial court

bias) are unexhausted.  Petitioner did not properly present the claims to the TCCA in a PDR, and

the state habeas court declined to review the claims because they had been presented and rejected

---

[1] Petitioner's involuntary plea claim (the third ground for relief in his petition) is referred
to herein as his second ground/claim.

on direct appeal and, thus, were procedurally barred.[2]  SHCR 164-65.  Petitioner replies that he

properly exhausted his state court remedies because he was required only "to present the

substance of his federal claim to the highest state court either through direct appeal or by state

court collateral review procedure," and he did the latter.  (Doc. 10 at 2.)  He relies on *Bledsue v.*

*Johnson*, 188 F.3d 250 (5th Cir. 1999), and *Richardson*, 762 F.2d 429.  (Doc. 10 at 2.)  Those

cases, however, are distinguishable.  In *Bledsue*, 188 F.3d at 254, the State waived the exhaustion

argument, and in *Richardson*, 762 F.2d at 429, 432, the petitioner had filed only a direct appeal

by the time he submitted his federal petition and, thus, could still exhaust his state habeas

remedies.  Were this Court now to require Petitioner to present his claims to the Texas Court of

Criminal Appeals, they would be subject to dismissal under the Texas abuse-of-the-writ doctrine,

Tex. Code Crim. Pro. Ann. art. 11.07, § 4.  *See Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir.

1997)  ("Texas abuse-of-the-writ doctrine prohibits a second [state] habeas petition, absent a

showing of cause, if the applicant urges grounds therein that could have been, but were not,

raised in his first habeas petition.").

        Therefore, because Petitioner did not properly present his second and sixth claims to the

highest court in Texas, his failure to exhaust constitutes a procedural default that bars this Court

from considering his claims.[3]  *Morris*, 413 F.3d at 491-92.  Petitioner may overcome such

---

[2] The trial court found Petitioner's "assertion [in his sixth claim] that the trial court was not impartial to actually be an attack on the trial court's discretion to believe the prosecutor's testimony over Applicant's at the withdrawal of the guilty plea hearing."  SHCR at 164, 165. The trial court then concluded that the issue was raised and rejected on direct appeal and, thus, was procedurally barred.  *Id.*

[3] The state habeas court's refusal to review the second and sixth claims on the merits, because they had been raised and rejected on direct appeal, does not amount to a procedural default for purposes of federal habeas review.

procedural default, if he can establish cause for the default and actual prejudice or show that a fundamental miscarriage of justice would occur if the Court were to refuse to consider his claims. *Id*. Here, Petitioner does not meet that burden.

Although Petitioner does not allege cause and prejudice, he argues at length that he is actually innocent of the crime of attempted capital murder with a deadly weapon. (Doc. 2 at 7.) While he concedes driving the car during the commission of the offense, he states he was not the person who committed the crime because he did not fire a weapon and he did not have the specific intent to commit murder. *Id*. He asserts that the victim even "refused to testify at sentencing because [Petitioner] was not the man who shot him." (Doc. 3 at 4.) In addition, he notes that the indictment failed to properly charge him as "a party or accomplish to the offense." *Id.*

To establish actual innocence, "the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)); *accord Finley v. Johnson,* 243 F.3d 215, 221 (5th Cir. 2001).

---

When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted. To the contrary, it provides strong evidence that the claim has already been given full consideration by the state courts and thus is *ripe* for federal adjudication.

*See Cone v. Bell*, ___ U.S. ___, 129 S. Ct. 1769, 1781 (2009).

Unlike *Cone*, however, Petitioner did not present his claims to the highest court in Texas through his direct appeal in a petition for discretionary review. Thus, his claims are procedurally barred.

In this case, Petitioner cannot establish his actual innocence of the attempted capital murder offense to which he pleaded guilty.  He has produced no new, reliable evidence sufficient to refute the validity of his original guilty plea to attempted capital murder.  He merely argues that he could not have been convicted of the offense of attempted capital murder because he did not fire any weapon and lacked the necessary intent to commit the crime.  (Doc. 3 at 2.)  The law of parties, however, permits a defendant to be held criminally responsible for an offense committed by another "for which he is criminally responsible."  Tex. Penal Code § 7.01(a); *see also* Tex. Penal Code § 7.02.  "Texas law draws no distinction between principals and accomplices for purposes of assessing criminal responsibility and punishment; they are all equally culpable."  *Brown v. Collins*, 937 F.2d 175, 183 (5th Cir. 1991).  Contrary to Petitioner's assertion (Doc. 3 at 4), the State was not required to plead in the indictment that he had acted as a party to the offense in order to authorize a conviction on that theory.  *Movable v. State,* 85 S.W.3d 287, 287 (Tex. Crim. App. 2002).[4]

Moreover, Petitioner was well aware that he was pleading guilty under the law of parties as evidenced by the following exchange between him and the assistant prosecutor during his guilty plea hearing:

> Q.  And just without going into details at the moment, your codefendant, Mr. Aaron Lamont Vaughn, charged codefendant, Aaron Lamont Vaughn, is he just as guilty of this offense as you are?

---

[4] The assertion that applying law of parties was incorrect under federal law because it "broadened the possible bases of conviction beyond what was embraced in the indictment" has no merit.  (Doc. 3 at 4-5.)  *United States v. Miller*, 471 U.S. 130, 145 (1985) on which Petitioner relies, is inapposite.  *Id.* at 4.  *Miller* held that a variance, which occurred when the Government struck language from the indictment, added nothing new to the indictment and did not constitute a broadening.  471 U.S. at 145.

A. Yes, ma'am, he is.

Q. You both, along with some others, acted as parties, you were acting together when you committed this offense, right?

A. Yes, ma'am.  I drove.

SHCR at 118.

Clearly, Petitioner could have gone to trial and argued for a not guilty verdict on the ground that, although he was a party to the burglary of a habitation, he did not know his co-defendant was going to shoot at the homeowner and, thus, that he did not have the requisite intent.  Hoping that the prosecutor would recommend a lower sentence, however, Petitioner knowingly and voluntary pleaded guilty and offered his testimony against the co-defendant. *Wyatt v. State*, 2009 WL 1801036, *1.   Petitioner was well aware that if convicted, he faced imprisonment of five to 99 years or life.  *Id.* at *6-7.   Under these circumstances, Petitioner cannot make a sufficient showing of actual innocence to satisfy the fundamental miscarriage of justice exception to procedural default by failure to exhaust state remedies.

In addition, Petitioner states that on April 17, 2009, the trial judge signed a *nunc pro tunc* order, deleting the deadly weapon finding.  (Doc. 3 at 3.)  It is undisputed that a deadly weapon finding could have been improper because Petitioner did not know that the defendant had or intended to use a deadly weapon.  *See* Tex. Code Crim. Proc. Art. 42.12, § 3g(a)(2) (deadly weapon finding is appropriate *inter alia* "when it is shown . . . that the defendant . . . was a party to the offense and knew that a deadly weapon would be used or exhibited.").  Moreover, the deadly weapon finding was a discretionary matter with the trial court.  *See Johnson v. State*, 233 S.W.3d 420, 425 (Tex. App.–Fort Worth 2007).   Thus, deletion of the deadly weapon finding is

of no relevance to Petitioner's claim that he is actually innocent of the attempted capital murder offense.

In summary, because Petitioner cannot demonstrate cause and prejudice for his default or that a fundamental miscarriage of justice would occur, his claims that his guilty plea was involuntary and that the trial court was biased against him are procedurally barred from federal habeas review. *Ries*, 522 F.3d at 523-24.

**B.     Merits Review**

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), precludes habeas corpus relief unless the state court's adjudication on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This Court's inquiry under section 2254(d) is limited to whether the state court's application of Supreme Court precedent was unreasonable. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (2011). In addition, the state court "must be granted a deference and latitude that are not in operation when the case involves review under the . . . standard itself." *Id.* Thus, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.* at 786.

Mindful of the deference due to the state court's decision under the AEDPA, the Court addresses each of Petitioner's remaining claims below.

1. <u>Actual Innocence</u>

In his first ground, Petitioner asserts a standalone claim of "actual innocence of the crime charged in [the] indictment."  (Doc. 2 at 7.)  Actual innocence, however, is not cognizable as a freestanding federal habeas claim.  *Foster v. Quarterman,* 466 F.3d 359, 367-68 (5th Cir. 2006) (citing *Dowthitt v. Johnson*, 230 F.3d 733, 741-42 (5th Cir. 2000)).  In *House v. Bell*, 547 U.S. 518 (2006), the United States Supreme Court "'decline[d] to resolve' whether *Herrera*[*v. Collins*, 506 U.S. 390, 417 (1993)] left open the possibility of stand-alone actual-innocence claims."  *Foster*, 466 F.3d at 367; *see also Cantu v. Thaler,* 632 F.3d 157, 167-68 (5th Cir. 2011) (reaffirming refusal to recognize a freestanding actual innocence claim in section 2254 proceedings), *pet for cert. filed* (Jun 9, 2011).  Nevertheless, as previously noted, Petitioner cannot establish his actual innocence of the attempted capital murder offense to which he pled guilty.  Therefore, his actual innocence claim should be denied.  *See Randall v. Quarterman*, No. 3:07-CV-2156-M, 2009 WL 2002262, *4-5 (N.D.Tex. 2009) (denying standalone claim of actual innocence because not cognizable and because Petitioner could not establish his actual innocence).[5]

2. <u>Ineffective Assistance of Counsel</u>

Under the AEDPA, the Court reviews Petitioner's ineffective assistance of counsel claims under a "doubly deferential" standard.  *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1403

---

[5] The state habeas court did not address Petitioner's actual innocence claim because the State construed the claim as a challenge to the sufficiency of the evidence, which is not cognizable in state habeas proceedings.  SHCR at 99.

(2011).  The Court "take[s] a 'highly deferential' look at counsel's performance," under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of § 2254(d).'"  *Cullen*, 131 S. Ct. at 1403 (quoted cases omitted).  Under section 2254(d)(1) deference, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."  *Harrington*, 131 S. Ct. 770, 785 (2011).

To establish ineffective assistance of counsel, a petitioner must show both deficient performance by counsel and prejudice.  *Strickland*, 466 U.S. at 687.  This requires the petitioner to establish (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 688, 694.  The Court need not address both components if the petitioner makes an insufficient showing on one.  *Id.* at 697.

In determining whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  In the context of a guilty plea, "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage."  *Premo v. Moore,* ___ U.S. ___, 131 S. Ct. 733, 741 (2011).  "[H]abeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel."  *Id.*

To establish prejudice in the context of a guilty plea, the petitioner must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The petitioner bears the burden of demonstrating that

"there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

      (a) <u>Ineffective Assistance of Plea Counsel</u>

      (i) <u>Failure to Attend Meeting with Prosecutor</u>

Petitioner asserts "Counsel Tim Jeffrey was not present at [a] meeting between [Petitioner] and [the Assistant] DA," even though counsel had "in fact set up said meeting." (Doc. 2 at 7.)  According to Petitioner, Assistant Prosecutor Layne Jackson and State Investigator James Penn questioned him during the meeting, "discussed the charged offense, possible sentencing . . . and plea agreement terms," and "concluded with the signing of [a] judicial confession."  (Doc. 3 at 6-7.)  Relying on *United States v. Cronic*, 466 U.S. 648 (1984), Petitioner argues that plea negotiation constitutes a critical stage of the proceeding and, thus, that prejudice should be presumed.  *Id.* at 7.

During the State habeas proceeding, Jackson submitted an affidavit, stating the meeting occurred after Petitioner pleaded guilty and involved only questions about the offense and Petitioner's proposed testimony if called to testify at his co-defendant's trial.  *See* SHCR at 155. In his affidavit, Jeffrey also affirmed the meeting was post-plea and involved only testimony related to the co-defendant's action.  *Id.* at 167.  Relying on the above affidavits, the state habeas court found that

> [Petitioner] was not denied counsel at any plea negotiations.  When [Petitioner]
> met with the Assistant DA and the DA Investigator, no plea bargain was
> discussed.  Rather, all conversations dealt with the offense in question and what
> [Petitioner] would be able [to] testify about in the co-defendant's trial."

*Id.* at 162.

In his brief, Petitioner argues the meeting with the prosecutor and investigator could not have taken place post-guilty plea because he "questioned the DA about receiving probation," and the DA threatened "to pull the offer of probation" and advised him "she could not tell him he was getting probation before he testified, because it would raise questions of his credibility." (Doc. 3 at 7.) Petitioner's argument is not supported by the record, however, as Petitioner pled guilty without a plea agreement and his sentencing was postponed to allow him the opportunity to testify against his co-defendant in the hope of receiving a reduced sentence for his cooperation. Moreover, during the plea hearing, the prosecutor specifically reminded Petitioner about the upcoming meeting as follows: "And again just so you understand today -- you understand that you are going to be meeting with myself and my investigator, Investigator Penn, and discuss what happened." SHCR at 119-120.

In his reply, Petitioner challenges Jeffrey and Jackson's affidavits for the first time, claiming "they [were] not presented as being 'true and correct' or 'under penalty of perjury.'" (Doc. 10 at 4.) Both affidavits, however, were "sworn" before a notary public and, thus, properly considered by the state habeas court. *See Nissho-Iwai American Corp. v. Kline,* 845 F.2d 1300, 1305-06 (5th Cir. 1988) (disregarding "affidavit" because not sworn or declared to be true and correct under penalty of perjury). In addition, contrary to Petitioner's assertions, the affidavits did not "contradict each other" and, as noted above, supported the state court's conclusions that the meeting occurred after Petitioner's guilty plea and involved only his proposed testimony against the co-defendant. (Doc. 10 at 4.)

Because Petitioner's meeting with the prosecutor and investigator involved neither his plea nor his punishment, counsel was not constitutionally deficient in failing to attend the

meeting.  Accordingly, the state court's denial of this ground was a reasonable application of federal law.

#### (ii) Failure to Investigate Facts, Circumstances, Laws and Witnesses

Petitioner contends that his guilty plea counsel "failed to investigate facts, circumstances, and laws of case . . . and interview witnesses."  (Doc. 2 at 7.)  He asserts that Jeffrey did not conduct pretrial investigations or interview witnesses to determine whether Petitioner was the right person, and failed to obtain a statement from the victim that Petitioner "was the wrong man."  (Doc. 3 at 7.)  In addition, Petitioner contends Jeffrey wrongly advised him about "law of parties," and "plead[ing] guilty to an offense which the state could not prove" because he "did not know about any weapon or specific intent."  *Id.* at 8-9.

The state habeas court found that Petitioner

> received effective assistance of counsel from Tim Jeffrey. [Petitioner] has failed to state what witnesses counsel failed to interview, that they were available to testify and that their testimony would have benefitted him. [Petitioner] has failed to show what a further investigation would have proven and has failed to state what pretrial motions should have been filed and how they would have benefitted him.

SHCR at 162.

Once a criminal defendant enters a knowing, intelligent, and voluntary guilty plea, all non-jurisdictional defects in the criminal proceedings are waived except for claims of ineffective assistance of counsel relating to the voluntariness of the plea.  *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary

and intelligent character of the guilty plea by showing that the advice he received
from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson,* 411 U.S. 258, 267 (1973).

In light of the above, the Court agrees with Respondent that Petitioner's guilty plea
waived his claims of ineffective assistance by his plea counsel.  (Doc. at 9 at 26, 27.)  Petitioner's
belated attempt to couch his claims as "vital in [the] determination of Ground three, Involuntary
Pleas [sic] due to Ineffective Assistance of Counsel" (Doc. 10 at 4) is unpersuasive.  Petitioner
seeks to ignore the court of appeal's detailed opinion that his plea was voluntary because (1) the
trial court had admonished him about the consequences of his plea and the applicable punishment
range, and (2) he understood the elements of the offense and the options available to him.  In
addition, Petitioner seeks to overlook the court of appeals' finding that he did not have a plea
agreement despite his protestations to the contrary.  As noted above, comprehending well the law
of parties and its ramifications, Petitioner agreed to plead guilty and offer his testimony against
the co-defendant to the prosecutor to lessen the chances of receiving a high sentence.  In light of
the knowing and voluntary nature of his guilty plea, Petitioner has waived his claims of
ineffective assistance of his plea counsel.   *See Smith,* 711 F.2d at 682.[1]

Even if not waived by the guilty plea, Petitioner's claims have no merit.  As the state
habeas court concluded, Petitioner has failed to show what investigation, if any, his plea counsel
could have conducted, what it could have uncovered, and how his defense would have benefitted.

---

[1] Petitioner mistakenly relies on *Haring v. Prosise*, 462 U.S. 306 (1983), to argue that his
guilty plea did not waive his claims of ineffective assistance of counsel.  (Doc. 10 at 4.)  *Haring*
is inapposite.  It held that a plaintiff's guilty plea in a state-court criminal proceeding did not
constitute a waiver of antecedent Fourth Amendment claims brought in a *subsequent civil rights
damages action*, under 42 U.S.C. § 1983, against police officers who participated in a search of
the plaintiff's apartment.  *Haring*, 462 U.S. at 318-23.

The same applies to Petitioner's claims that plea counsel failed to interview witnesses, including the victim of the criminal offense and the individual who picked him out of the police line-up or photo spread.  (Doc. 3 at 7.)  Petitioner would have the Court disregard his admissions during the guilty plea colloquy that he wished to plead guilty as a party, even though he only drove the car, and that he decided to do so in the hopes of receiving a lenient sentence.  SHCR at 119-120.

Next, Petitioner argues that his plea counsel wrongly  "advised [him] to plead guilty to an offense which the state could not prove," namely that he "'would not be guilty of Attempted Capital Murder, even as a party' if he did not know that a weapon would be used or exhibited." (Doc. 3 at 8-9.)  Petitioner explains:

> The respondent wishes for the Court to ignore that when [Petitioner] plead [sic] guilty it was under the terms that he used a deadly weapon in the commission of the crime.  The trial court deleted such finding that a deadly weapon was used by [Petitioner], which changed the terms of the plea elements.  To commit the offense that [Petitioner] was charged with, a deadly weapon needed to be an element of the crime.  Said weapon was deleted, so [Petitioner] could not have been charge of the offense committed.

(Doc. 10 at 4.)

Petitioner is confusing the elements of a deadly weapon finding, which is a discretionary matter with the trial court, *see Johnson*, 233 S.W.3d at 425, and voluntarily pleading guilty as a party to the offense charged in the indictment.  Here, as noted above, a deadly weapon finding could have been improper because Petitioner did not know that the defendant had or intended to use a deadly weapon.  *See* Texas Penal Code Art. 42.12, § 3g (deadly weapon finding is appropriate *inter alia* "when it is shown that the defendant . . . was a party to the offense and knew that a deadly weapon would be used or exhibited.").  In fact, as Petitioner acknowledges, the trial court signed a *nunc pro tunc* order on April 17, 2009, deleting the deadly weapon finding

from Petitioner's judgment.  SHCR at 87.[2]

Absent a deadly weapon finding, Petitioner could still have entered a knowing and voluntary guilty plea as a party to attempted capital murder, even if he did not have the requisite intent to "attempt to cause the death of [the victim] by intentionally shooting at [him] with a firearm," as charged in the indictment.  SHCR at 170.  Under the Texas law of parties,

> [i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

Tex. Penal Code § 7.02(b).[3]  According to his judicial confession, this is exactly what Petitioner did.  SHCR at 118.  Here, although Petitioner did not attempt to cause the death of the victim by intentionally shooting at him with a firearm, as alleged in the indictment, it was sufficient that "someone for whom the defendant is criminally responsible" did.  *Brown v. Collins*, 937 F.2d 175, 181-182 (5th Cir. 1991); *Ex parte Martinez*, 330 S.W.3d 891, 901-902 (Tex. Crim App. 2011) (defendant who conspired to commit robbery is guilty of murder which occurred in furtherance of the robbery).

The record belies Petitioner's complaint of deficient performance by his plea counsel, and

---

[2] The April 24, 2009, letter from Petitioner's appellate counsel, noting that the trial judge "denied the motion for a *nunc pro tunc* order to eliminate the deadly weapon finding" is puzzling.  (Doc. 3, ex. I.)  Nevertheless, the Court treats this case as one where the judgment simply omitted a deadly weapon finding.  *See Johnson*, 233 S.W.3d at 425 ("The purpose of a nunc pro tunc order is to correctly reflect in the records of the trial court the judgment it actually made but which, for some reason, did not enter of record at the proper time.").

[3] *See also* Tex. Penal Code 7.02(a)(2) ("A person is criminally responsible for an offense committed" by another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.").

he has not demonstrated prejudice sufficient to undermine the voluntary nature of his guilty plea. As a matter of fact, Petitioner does not even allege, much less offer proof, that he would not have pleaded guilty and would have insisted on going to trial but for counsel's allegedly deficient performance. *Hill,* 474 U.S. 52, 56–59. Therefore, Petitioner cannot overcome the strong presumption that he received effective assistance of counsel during the guilty plea proceedings. The state court's denial of this ground was a reasonable application of federal law.

### (iii) False Advice Regarding Plea Agreement

Next Petitioner asserts his plea counsel gave him false advice regarding the "plea deal and sentence for pleading guilty." (Doc. 2 at 7.) He claims counsel wrongly advised him about "receiv[ing] probation for pleading guilty and testifying." (Doc. 3 at 8-9.) Petitioner, however, knew well that he did not have any type of plea bargain or agreement with the state as he acknowledged at the plea hearing and as the court of appeals found. SHCR at 118-120; *Wyatt,* 2009 WL 1801036, *7. Thus, Petitioner's allegations are conclusory and speculative and cannot form the basis for section 2254 relief. *See United States v. Demik*, 489 F.3d 644, 646-47 (5th Cir. 2007) (holding that a movant's claim of ineffective assistance of counsel must be stated with specificity, and " allegations" and "generalized assertions" of error will not suffice); *Ross* v. *Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (mere conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a habeas proceeding).

Even if counsel "had the impression that [Petitioner] would have a good chance at probation and he told this to [him]," counsel did not act deficiently. (Doc. 3 at 6.) As confirmed by his affidavit in the state habeas case, counsel at no time guaranteed probation to Petitioner. SHCR at 167. He also advised Petitioner to "stay out of trouble," which Petitioner failed to do

and which ultimately disqualified him as a credible witness for the state. *Id.* 167-169. As Respondent correctly suggests, Petitioner's failure to receive probation was due to his own actions, not a deficiency in counsel's advice. Under these circumstances, counsel was neither deficient nor prejudicial. The state court's denial of this ground was a reasonable application of federal law.

### (b) Post Plea and Sentencing Counsel

#### (i) Failure to Investigate and Interview Witnesses

Petitioner contends Phillip Hayes, his post plea and sentencing counsel, should have called Petitioner's former counsel, Jeffrey, to testify at the hearing on the motion to withdraw guilty plea. (Doc. 3 at 9.) Hayes interviewed Jeffrey, but because his testimony was not favorable, Hayes decided not to call him to testify at the motion to withdraw hearing. SHCR at 168-169. Petitioner claims Hayes was under "a conflict of sorts, as Jeffrey was at one time working out of the same law office." (Doc. 3 at 9.) His allegation, however, is conclusory at best and fails to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).

Next, Petitioner asserts that Hayes failed to interview the victim and put him on the stand during sentencing to testify that Petitioner "was the wrong person." (Doc. 3 at 9.) This allegation fares no better. Since Petitioner pled guilty, and the trial court denied his motion to withdraw, the victim's testimony that Petitioner "was the wrong person" had absolutely no relevance at sentencing. The state court's denial of this ground was a reasonable application of federal law.

(ii) <u>Failure to Preserve the Record Regarding Deleted Testimony</u>

Next, Petitioner complains that Hayes failed to preserve the record with respect to the misconduct of the trial judge in allegedly removing "damaging testimony of DA Jackson from the record or threats to hold counsel in contempt." (Doc. 2 at 7; Doc. 3 at 9.)  Petitioner, however, does not explain what record counsel should or could have preserved.  Therefore, Petitioner's allegations are conclusory and speculative and cannot form the basis for section 2254 relief.  *See Ross*, 694 F.2d at 1012.

In summary, Petitioner fails to show that the state court's decision to deny relief on his claims of ineffective assistance of counsel was contrary to or involved an unreasonable application of *Strickland*.  Because no basis for habeas relief is shown, Petitioner's third ground should be denied.

3. <u>The State Violated Petitioner's Right Against Self Incrimination</u>

In his fourth ground, Petitioner contends the State violated his right against self incrimination during the meeting with Prosecutor Jackson and Investigator Penn. (Doc. 3 at 14-15.)  Petitioner reiterates the meeting occurred prior to his guilty plea. (Doc. 10 at 6.)  However, as discussed earlier in connection with his claim of ineffective assistance of counsel, the meeting occurred post-plea and involved neither Petitioner's plea nor his punishment. *See supra* II.B.2(a)(i).  As a result, Respondent correctly asserts that Petitioner's guilty plea waived his self-incrimination claim. *Brown v. Butler*, 811 F.2d 938, 940 (5th Cir. 1987) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)).  The state court's denial of this ground was a reasonable application of federal law.  Therefore, Petitioner's claim fails.

4. Prosecutorial Error or Misconduct

In his fifth ground, Petitioner claims the prosecutors assigned to his case engaged in misconduct by presenting false evidence that he committed the offense before the grand jury, met with Petitioner without his counsel present, failed to follow through on the plea agreement, opposed his efforts to withdraw his guilty plea, and failed to turn over statements from the victim that Petitioner was the wrong men.  (Doc. 2 at 8A; Doc. 3 at 17-19.)   None of the above claims, however, rises to prosecutorial misconduct.  The Court has previously addressed and rejected each of the claims in detail above.  Petitioner cannot show the state court's decision to deny this claim was contrary to, or involved an unreasonable application, of clearly established federal law. Accordingly, this ground should be denied.

5. Request for Evidentiary Hearing

Throughout his pleadings, Petitioner requests an evidentiary hearing.  During his state habeas proceedings, however, the court afforded him a full and fair opportunity to develop and litigate his claims.  Petitioner has presented this court with no new evidence or factual theories supporting any of his claims that were unavailable to him, despite the exercise of due diligence, during his state habeas corpus proceeding.  Likewise, Petitioner does not identify any new legal theories supporting his claims for relief herein that were unavailable at the time he filed and litigated his state habeas corpus claims.  Under these circumstances, Petitioner is not entitled to a federal evidentiary hearing.  28 U.S.C. § 2254(e)(2).

### III.  RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus

under 28 U.S.C. § 2254 be **DENIED**.

SIGNED October 26, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner
provided by law.  Any party who objects to any part of this report and recommendation must file
specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. §
636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific
finding or recommendation to which objection is made, state the basis for the objection, and
specify the place in the magistrate judge's report and recommendation where the disputed
determination is found.  An objection that merely incorporates by reference or refers to the
briefing before the magistrate judge is not specific.  Failure to file specific written objections will
bar the aggrieved party from appealing the factual findings and legal conclusions of the
magistrate judge that are accepted or adopted by the district court, except upon grounds of plain
error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE